```
           UNITED STATES DISTRICT COURT
              DISTRICT OF MINNESOTA
              Civil No. 10-3081(DSD/SER)
```

Deshun Michael Carter,

       Plaintiff,

v.                                                      **ORDER**

Adam L. Bailey, individually and
in his official capacity as St.
Paul Police Officer, Thomas M.
Weinzettel, individually and in
his official capacity as St. Paul
Police Officer,

       Defendants.

    J. Ashwin Madia, Esq. and Madia Law LLC, 333 Washington
    Avenue North, Suite 345, Minneapolis, MN 55401, counsel
    for plaintiff.

    Louise T. Seeba, Esq., St. Paul City Attorney's Office,
    15 West Kellogg Boulevard, Suite 750, St. Paul, MN 55102,
    counsel for defendants.

This matter is before the court upon the motion for summary judgment by defendants Adam L. Bailey and Thomas W. Weinzettel, police officers for the city of St. Paul, Minnesota. Based on a review of the file, record and proceedings herein, and for the following reasons, the court denies the motion.

**BACKGROUND**

This excessive-force dispute arises out of the arrest of plaintiff Deshun Carter by defendants on September 26, 2009. That day defendants were on routine patrol when they heard loud music

near Carter's home. Carter was grilling in his yard with his parents, wife and a friend, Kyle Shepperson[1], and music was playing from a vehicle parked in front of the house. Defendants stopped their squad vehicle in front of Carter's house, where a three- to four-foot fence separated the yard from the street. Defendants identified themselves and asked about the music. Carter acknowledged that he was responsible for the music and complied with defendants' request to turn down the volume. Carter and Shepperson identified themselves, and defendants began a warrant check. The parties disagree about what happened next.

## I. Movement Away from Officers

According to Carter's version of the facts, he noticed that the food on the grill was burning. Carter Dep. 39:14-16. He then told Bailey that he was going to go check on the grill and jumped over the fence surrounding his yard.[2] Shepperson Dep. 23:16-20, 30:16-31:3, 44:11-45:17.

According to defendants' version of the facts, Carter became aggressive while Bailey was running the warrant check, and said, "you don't even recognize me, you've harassed me before." Bailey Dep. 26:8-10. Without explanation, Carter jumped over the fence

---

[1] Affiants make statements about a "Lance Sheppardson." It appears likely that Lance Sheppardson is Kyle Shepperson.

[2] Carter testified that he did not tell defendants where he was going when he left to tend the grill. See Carter Dep. 38:11-39:5.

and ran toward the grill. Id. at 31:23-25. Defendants ordered him to stop and return; Carter did not comply. Id. at 33:16-17.

The parties agree that once Carter reached the grill, he picked up a grilling utensil.[3] Carter Dep. 45:13-46:21; Bailey Dep. 34:8, 35:16-17.

## II. Restraint in Yard

According to Carter, defendants told him to return to them after he reached the grill. Carter Dep. 44:9-15. In response, Carter "placed the top over the grill, stuck the tong down, put [his] hands to [his] side, gave the officer direct contact with [his] eyes ... and started walking toward [the officer]." Id. at 47:17-20. Bailey approached Carter and grabbed his right wrist. Id. at 48:22-49:7. Carter put his hands behind his back. Id. at 49:23-24. Bailey then pushed Carter into the fence. Id. at 52:2-5. Bailey attempted to "sweep kick" Carter, but Carter did not fall. Id. at 52:19-21, 53:22-56:12; J. Carter Aff. ¶ 6; G. Carter Aff. ¶¶ 6-7. Thereafter, defendants deployed Aerosol Subject Restraint (ASR), pushed Carter away from them and tased him. Carter Dep. 57:11–61:3; J. Carter Aff. ¶ 6.

According to defendants, Bailey gave several verbal commands to stop and turn around, but Carter did not comply. Bailey Dep.

---

[3] The parties disagree about the nature of the utensil. Carter contends it was a pair of tongs. Carter Dep. 45:13-14. Defendants explain that it was a "weapon of opportunity." Defs.' Mem. Supp. 4; Bailey Dep. 32:6-10; 34:5-9.

3

40:15-41:20.  Instead, Carter said, "I'm in my yard, you can't do anything to me."  Id. at 34:14-15.  Bailey approached Carter and grasped Carter's wrist, but Carter pulled his arm away.  Id. at 37:9-16.  Carter did not comply with commands to give defendants his hands and instead resisted by holding onto the fence and pushing back against Bailey.  Id. at 48:10-20; 49:1-6.  After Weinzettel deployed ASR, Carter "took kind of a staggered stance with his feet and raised his hands as if he were going to fight or punch [Bailey]."  Id. at 52:3-24.  Bailey then deployed his taser in probe mode, and Carter fell.

The parties agree that defendants handcuffed Carter when he was on the ground.

### III. Placement in Squad Vehicle

According to Carter, defendants slammed the squad vehicle door against his legs four or five times as he was trying to move his legs inside the vehicle.  Carter Dep. 67:14-20; Shepperson Dep. 38:10-13, 39:21-41:11.  According to defendants, Carter was not being cooperative and they had to "push him down" into the squad vehicle.  Bailey Dep. 58:20-59:9.  Defendants deny slamming the vehicle door against Carter's legs.

On July 22, 2010, Carter sued defendants in their individual and official capacities, claiming that defendants used excessive force and unlawfully arrested him.  Defendants move for summary judgment.

4

## DISCUSSION

### I. Summary Judgment Standard

The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

The court views all evidence and inferences in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex v. Catrett, 477 U.S. 317, 324 (1986). Moreover, if a plaintiff cannot support each essential element of his claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23.

### II. Qualified Immunity

"The doctrine of qualified immunity protects [law enforcement] officers from personal liability under § 1983 insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known." Baribeau v. City

of Minneapolis, 596 F.3d 465, 473 (8th Cir. 2010) (citation and internal quotation marks omitted).  The court applies the doctrine of qualified immunity in a manner that "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law."  Walker v. City of Pine Bluff, 414 F.3d 989, 992 (8th Cir. 2005) (quoting Hunter v. Bryant, 502 U.S. 224, 229 (1991)).

To determine whether defendants are entitled to qualified immunity, the court views the facts in the light most favorable to Carter and considers (1) whether the alleged facts demonstrate that the conduct of defendants violated a constitutional right and (2) whether the right claimed was clearly established at the time of the alleged injury.  See Howard v. Kansas City Police Dept., 570 F.3d 984, 988 (8th Cir. 2009).  "If the answer to either question is no," then defendants are entitled to qualified immunity.  Doe v. Flaherty, 623 F.3d 577, 583 (8th Cir. 2010); see Pearson v. Callahan, 129 S. Ct. 808, 818 (2009).

**III.  Section 1983 Claims**

Section 1983 of Title 42 of the United States Code is "not itself a source of substantive rights."  Albright v. Oliver, 510 U.S. 266, 271 (1994) (citation and internal quotation marks omitted).  Accordingly, a plaintiff must "identify the specific constitutional right allegedly infringed."  See id. (citing Graham v. Connor, 490 U.S. 386, 394 (1989)).  Here, Carter claims that

6

defendants violated his Fourth Amendment right to be free from unreasonable seizure.

### A.   Excessive Force

The Fourth Amendment right to be free from unreasonable seizure protects against the use of excessive force in the apprehension or detention of a person. See Graham, 490 U.S. at 395. "To establish a constitutional violation under the Fourth Amendment's right to be free from excessive force, the test is whether the amount of force used was objectively reasonable under the particular circumstances." Brown v. City of Golden Valley, 574 F.3d 491, 496 (8th Cir. 2009) (citations omitted). "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Cook v. City of Bella Villa, 582 F.3d 840, 849 (8th Cir. 2009) (quoting Graham, 490 U.S. at 396).

When evaluating the reasonableness of an officer's use of force, a court considers "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of defendants or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. (citing Terry v. Ohio, 392 U.S. 1, 20-22 (1968)). The "calculus of reasonableness

must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Id. at 396-97; see Brown, 574 F.3d at 496. In short, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Cook, 582 F.3d at 849 (8th Cir. 2009) (quoting Graham, 490 U.S. at 396).

In this case, the underlying noise violation was neither severe nor violent. However, there is a genuine dispute about whether Carter fled defendants without explanation, ignored commands or seized a "weapon of opportunity." Genuine disputes also exist about whether Carter resisted or attempted to evade being detained.

Viewing the facts in the light most favorable to Carter, a jury could find that Carter told defendants where he was going, complied with defendants' requests to put the grilling utensil down, complied with the command to walk towards defendants and submitted to being handcuffed. As a result, a jury could find that using ASR, a taser or repeatedly striking Carter's legs with the vehicle door were not objectively reasonable. The right to be free from excessive force was clearly established in September 2009. See Brown, 574 F.3d at 499; see also Cook, 582 F.3d at 849. Therefore, material, disputed facts preclude finding that

defendants are entitled to qualified immunity, and summary judgment is not warranted on Carter's excessive-force claim.

### B.  Unlawful Arrest

A warrantless arrest violates the Fourth Amendment unless it is supported by probable cause.  Amrine v. Brooks, 522 F.3d 823, 832 (8th Cir. 2008).  Defendants argue that they had an objectively reasonable belief that probable cause existed to arrest Carter for disorderly conduct and obstructing the legal process.

"Probable cause exists when the totality of the circumstances shows that a prudent person would believe that the arrestee has committed a crime."  Id. at 832.  An officer may be wrong as long as his belief is reasonable: to prevail on a claim of unlawful arrest, a plaintiff must show that the officer lacked "arguable probable cause."  Walker, 414 F.3d at 992 (citation and internal quotation marks omitted).  "If an officer alleges conduct by an arrestee giving rise to probable cause and those facts are undisputed, the officer is entitled to qualified immunity." Kukla v. Hulm, 310 F.3d 1046, 1049 (8th Cir. 2002) (citation omitted). If a plaintiff "challenges the officer's description of the facts and presents a factual account that would not permit a reasonable officer to make an arrest" then the officer is not entitled to qualified immunity at this stage in the litigation.  Id.

### 1. Disorderly Conduct

A person is guilty of disorderly conduct when, among other things, he "engages in brawling or fighting." Minn. Stat. § 609.72, subdiv. 1. The court has already determined that material facts remain in dispute about Carter's resistance, and therefore summary judgment is not warranted as to arguable probable cause for disorderly conduct.

### 2. Obstructing Legal Process

It is unlawful to "obstruct[], hinder[], or prevent[] the lawful execution of any legal process" or to "obstruct[], resist[], or interfere[] with a peace officer while the officer is engaged in the performance of official duties." Minn. Stat. § 609.50, subdiv. 1. The statute prohibits "intentional physical obstruction or interference with a police officer in the performance of his official duties." State v. Krawsky, 426 N.W.2d 875, 877 (Minn. 1988); see Jacobson v. Mott, 623 F.3d 537, 541 (8th Cir. 2010). Defendants argue they had probable cause to arrest Carter for obstructing legal process when Carter failed to comply with orders to return to them. Defs.' Mem. Supp. 17; Bailey Dep. 38:12-16.

The court has already determined that material facts remain in dispute about whether defendants issued commands and whether Carter complied. Viewing the facts in the light most favorable to Carter, a jury could determine that he complied with commands. Cf. Copeland v. Locke, 613 F.3d 875, 879 (8th Cir. 2010) (applying

Missouri law and holding arrest unlawful where plaintiff merely stepped away from police officer).  As a result, a reasonable jury could conclude that Carter did not intentionally obstruct or interfere with defendants' official duties.  Therefore, summary judgment is not warranted on Carter's unlawful-arrest claim.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that the motion for summary judgment [ECF No. 18] is denied.

Dated:  October 31, 2011

s/David S. Doty
David S. Doty, Judge
United States District Court
